UNITED STATES, Appellee

v.

Charles A. Graner Jr., Specialist
U.S. Army, Appellant

No. 09-0432

Crim. App. No. 20050054

United States Court of Appeals for the Armed Forces

Argued May 3, 2010

Decided June 25, 2010

STUCKY, J., delivered the opinion of the Court, in which ERDMANN
and RYAN, JJ., joined.  EFFRON, C.J., filed a separate opinion
concurring in part and in the result.  BAKER, J., filed a
separate opinion concurring in part and dissenting in part.


Counsel


For Appellant:  Charles W. Gittins, Esq. (argued); Captain
Michael E. Korte (on brief).


For Appellee:  Captain Chad M. Fisher (argued); Colonel Norman
F. J. Allen III, Lieutenant Colonel Martha L. Foss, and Major
Sara M. Root (on brief); Captain Philip M. Staten.


Military Judge:  James L. Pohl


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Graner, No. 09-0432/AR

Judge STUCKY delivered the opinion of the Court.

We granted review in this Abu Ghraib case to determine whether the military judge abused his discretion in (1) refusing to compel the Government to produce certain memoranda requested by the defense; (2) excluding the testimony of, and an e-mail from, Major Ponce; and (3) limiting the testimony of a defense expert witness. We hold that the military judge did not abuse his discretion in any of these decisions and affirm the judgment of the United States Army Court of Criminal Appeals (CCA).[1]

I.

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of conspiring to commit maltreatment, one specification of dereliction of duty for failing to protect detainees under his charge from abuse, four specifications of maltreating detainees, assault with a means likely to produce death or grievous bodily harm, assault consummated by battery, and committing an indecent act, in violation of Articles 81, 92,

---

[1] Appellant and the Government have also submitted three outstanding motions related to this case. "The Court will normally not consider any facts outside of the record established at the trial and the Court of Criminal Appeals." C.A.A.F. R. 30A(a). While we may remand for further factfinding if an issue concerning an unresolved fact affects the Court's resolution of the case, C.A.A.F. R. 30A(c), none of the documents that either party seeks to submit into the record are necessary to resolve the issues of this case. As such, all three motions are denied.

93, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 893, 928, 934 (2000).  The panel sentenced Appellant to a dishonorable discharge, confinement for ten years, reduction to E-1, and forfeiture of all pay and allowances.  The convening authority approved the findings and sentence.  The CCA summarily affirmed.  United States v. Graner, No. 20050054 (A. Ct. Crim. App. Feb. 9, 2009).

## II.

On November 7, 2003, Appellant exploited his position as a military policeman at Abu Ghraib, an American-operated detainee facility in Iraq, in order to abuse and demean Iraqi detainees. Appellant's actions that day included:  ripping the pants off a detainee and having Specialist Sabrina Harman write "I'm a rapeist [sic]" on the detainee's leg, then punching the detainee in the temple so hard that the detainee was knocked unconscious; posing in a picture with a detainee where Appellant held the detainee's head in his hands while Appellant's other hand was cocked in a fist near the detainee's head, even though photography was prohibited at that section of the facility; helping to force the unwilling detainees into a naked human pyramid and then posing for a picture with the pyramid of naked Iraqi detainees; taking a picture of a detainee being forced to masturbate while Private First Class (PFC) Lynndie England smiled, pointed at the detainee's genitals, and gave a "thumbs-

3

up" sign; placing a detainee in a position so that the detainee's face was directly in front of the genitals of another detainee to simulate fellatio, and then photographing them; and wrapping a tether around a detainee's neck, handing the tether to PFC England, and then taking a picture of PFC England and the tethered detainee.

The defense theory of the case was that Appellant was complying with a general command climate of humiliating detainees in the belief that humiliation would make them more likely to reveal information of intelligence value, and that individual military policemen had wide discretion in implementing this agenda. Several defense witnesses testified that the detainees were routinely naked, that their sleep was regulated and disturbed, that their food was limited, and that their hands were sometimes handcuffed to cell doors. Defense witnesses also testified that they had received vague orders to soften up detainees, that intelligence personnel did not care what was done to detainees, and that intelligence personnel supported more aggressive use of force on detainees.

III.

A.

On June 12, 2004, the defense requested that the Government provide

4

>     a copy of the Department of Defense report detailing
>     the legal obligations of the United States government
>     to refrain from using torture as an interrogation
>     technique and the legal liabilities of government
>     agents who do use such methods.  This report was
>     produced on or about 6 March 2003 by a DoD working
>     group. . . . This report would be relevant to the
>     defense's case because the report constitutes some
>     evidence of the duties owed to a detainee (viz. in the
>     context of a dereliction of duty charge) by a
>     government agent and of whether these duties change if
>     the agent is ordered to engage in conduct that
>     constitutes maltreatment.

Emphasis deleted.

The Government denied the request, asserting that the DoD report was not relevant because Appellant's actions were not in furtherance of an official interrogation.

At a session of the trial held pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), the defense renewed its request for the DoD report.  The military judge declined to compel release of the report because the defense had not demonstrated relevance, but the military judge invited a future motion if relevance could be established at trial.

Later in the same Article 39(a) session, the defense revisited the memo issue.  At this point, the defense counsel conflated the DoD report with other memoranda that were not previously mentioned:

>     Just a minute ago, we were talking about a memo from
>     the Department of Justice, from various Staff Judge
>     Advocates and General Counsel to the President of the
>     United States, to the CIA and other government
>     agencies, to the Secretary of Defense.  We understand

there were memos given, perhaps, to Lieutenant General Sanchez and to other officials within the direct chain of command of Specialist Graner pertaining to the legal status or not of detainees during the war on terrorism.

There was then a lengthy colloquy between the military judge and defense counsel in which the defense proposed several broad theories on why the memos were needed: (1) that the memos established that the detainees were not protected by any of the laws of war, and therefore Appellant could not possibly maltreat them; (2) that Appellant lacked the state of mind necessary to maltreat because he thought he was just following orders; and (3) that there was unlawful command influence in general. The military judge again rejected the request because Appellant had not formulated a sufficient theory of relevance but again invited the defense to resubmit the discovery request once relevance had been established. The defense did not submit another request for the DoD report or any other memos during the remainder of the trial.

The Government claims that the DoD report was publicly released on the DoD website one day after the Article 39(a) hearing.[2]

---

[2] The Government has moved to submit an affidavit stating that the assistant trial counsel disclosed the DoD report, as well as other documents, to the defense. As noted earlier, this Court has denied the motion to submit this affidavit.

B.

Appellant argues that the military judge abused his discretion by not compelling the Government to submit the various memoranda because they would have supported the defense theory that senior government officials had authorized the sort of detainee treatment that Appellant engaged in.

We review a military judge's ruling on a request for the production of evidence under the strict standard of an abuse of discretion.  United States v. Rodriguez, 60 M.J. 239, 246 (C.A.A.F. 2004).  "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law."  United States v. Miller, 66 M.J. 306, 307 (C.A.A.F. 2008); see United States v. Travers, 25 M.J. 61, 62 (C.M.A. 1987).

"The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain . . . evidence in accordance with such regulations as the President may prescribe."  Article 46, UCMJ, 10 U.S.C. § 846 (2006).  The government's suppression of evidence is a statutory violation if it violates the President's discovery rules, promulgated under

Article 46, UCMJ, which appear in Rules for Courts-Martial (R.C.M.) 701-703.

Three of these rules are potentially applicable to Appellant's discovery request:

(1) Each party is entitled to the production of evidence which is relevant and necessary. R.C.M. 703(f).

(2) Upon the request of the defense, the government must produce any documents that are in the possession of military authorities and are "material to the preparation of the defense or are intended for use by the trial counsel as evidence in the prosecution case-in-chief at trial." R.C.M. 701(a)(2)(A).

(3) The trial counsel must disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to:

    (A) Negate the guilt of the accused of an offense charged;

    (B) Reduce the degree of guilt of the accused of an offense charged; or

    (C) Reduce the punishment.

R.C.M. 701(a)(6).

Of course, these rules are themselves grounded on the fundamental concept of relevance. As Professor Wigmore put it over a century ago: "None but facts having rational probative value are admissible." 1 John Henry Wigmore, Evidence in Trials at Common Law 655 (Peter Tillers rev. 1983). For us, the

standard is set out in Military Rule of Evidence (M.R.E.) 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Applying this standard, we conclude that the military judge did not abuse his discretion in determining that the defense did not present an adequate theory of relevance to justify the compelled production of the DoD report, the only piece of evidence identified with specificity in the defense request.

None of the theories enunciated at the Article 39(a) session by Appellant established the relevance of the request. There was no evidence that Appellant's state of mind at Abu Ghraib was in any way affected by a DoD report that he had never seen. Appellant's affirmative duty to protect the detainees under his charge from abuse was not affected by any views on the international legal status of Iraqi detainees set out in the report. Abuse of detainees in the custody or control of the United States may form the basis of a maltreatment conviction. See United States v. Smith, 68 M.J. 316, 323 (C.A.A.F. 2010). Finally, Appellant failed to present any "facts which, if true, constitute unlawful command influence." United States v. Biagase, 50 M.J. 143, 150 (C.A.A.F. 1999).

The military judge also did not abuse his discretion in declining to order the production of the various other documents that Appellant maintains on appeal that he requested. R.C.M. 703(f)(3) requires that any request for the production of evidence shall list each piece of evidence and a description of each item "sufficient to show its relevance and necessity, a statement where it can be obtained, and, if known, the name, address, and telephone number of the custodian of the evidence." The defense failed to meet this burden with respect to any document encompassed by this issue other than the DoD report.

IV.

A.

Major William Ponce was a mid-level military intelligence officer who had been assigned to both Afghanistan and Iraq. Major Ponce wrote an e-mail on August 14, 2003, to several people in which he stated that he favored the more forceful treatment of detainees during interrogation. Abu Ghraib did not yet exist as an interrogation center when the e-mail was sent, but several of its recipients may have occupied positions at Abu Ghraib. There is no evidence that Appellant or any of his coconspirators ever knew about this e-mail. Appellant moved for its admission prior to trial on the basis that it may have affected the orders that issued from military intelligence teams. The Government objected on the basis that it was

irrelevant, was hearsay, and lacked foundation.  The military judge sustained the Government's objection because the e-mail was not relevant.  Later, there was a renewed discussion about Major Ponce's e-mail.  The military judge again denied the admission of the e-mail because it was too far removed in time and space from Appellant's activities at Abu Ghraib.

Appellant also wanted to call Major Ponce to testify before the court members to establish when military intelligence officers generally became more forceful in their treatment of detainees.  The military judge initially agreed to allow Major Ponce to testify about the "conditions for actionable intelligence and its impression on the [military intelligence] community in the September time-frame and the October time-frame."  But the military judge changed his mind after the defense moved to introduce the testimony of Roderick Brokaw, a retired military interrogator with the Army who had worked as an interrogator at Abu Ghraib, because the military judge reasoned that Mr. Brokaw had a strong connection with Abu Ghraib, while Major Ponce's connection was tenuous at best.  Mr. Brokaw was permitted to testify "as to pressure from higher echelons to produce actionable intelligence."

Later, the defense again argued that Major Ponce should be able to testify in order to show "the frustration that higher command was feeling" about being unable to acquire intelligence

within the existing interrogation parameters, but the military judge did not allow his testimony because it was unclear who received Major Ponce's e-mail or what impact it had on the interrogators at Abu Ghraib.

### B.

Appellant argues that the military judge abused his discretion when he declined to admit Major Ponce's e-mail or allow Major Ponce to testify, purportedly because Major Ponce would have helped establish the defense theory that his superiors authorized the rough treatment of detainees.

We review a military judge's decision on whether to admit evidence for an abuse of discretion.  United States v. Weston, 67 M.J. 390, 392 (C.A.A.F. 2009).

The military judge did not abuse his discretion when he declined to admit Major Ponce's e-mail and testimony.  There was no evidence that Appellant, or anyone giving orders to Appellant, knew about Major Ponce's e-mail, or had any contact with Major Ponce.  Appellant was still able to present direct evidence that he and his coconspirators believed that they were supposed to soften up the detainees.  Given the total lack of evidence connecting Major Ponce's opinions with Appellant's conduct, neither Major Ponce's e-mail nor his expected testimony had a tendency to show that any fact of consequence to the court-martial was more or less probable.

12

V.

A.

Thomas Archambault, a non-military training instructor and use-of-force specialist, testified for the defense as an expert on the use of force. At a pretrial Article 39(a) hearing, Mr. Archambault testified that use of the leash on detainees and the naked pyramids were reasonable uses of force. With respect to the tether, he stated that the use of the tether around the neck of the detainee was a reasonable means of cell extraction under the facts of this case. While Mr. Archambault said that the tether should not have been used around the neck as it was, he reasoned that the tether may have accidentally slipped from the upper torso to the neck. Mr. Archambault testified that the fact that pictures were taken of the leash incident did not render the tether incident unreasonable because the photographer could quickly have come to the other guard's aid in the event that the detainee became violent.

With respect to the naked pyramids, Mr. Archambault testified that this sort of "stacking" could be an appropriate use of force, even if it was neither authorized nor approved by any professional organization or training manual, as a means of controlling and containing unrestrained detainees. Here, Mr. Archambault reasoned, the detainees were not in restraints, they were shouting to each other in Arabic, and the detainees were

13

all in a small space with limited guards.  Mr. Archambault also testified that the form of stacking here prevented "positional asphyxia," a dangerous medical condition where a person has trouble breathing as a result of pressure on the diaphragm.  Mr. Archambault conceded that he was aware of only one incident of stacking humans and that occurred at Attica Prison, a civilian facility in the United States, by guards taking back the facility from rioting, unrestrained inmates.

The military judge ultimately limited Mr. Archambault's testimony to the point that the detainees would not have suffered from positional asphyxiation because of the manner in which they were stacked.  The military judge refused to allow Mr. Archambault to testify concerning the appropriateness of the leash (or tether) around the neck and stacking techniques.  The military judge concluded that such testimony was irrelevant and not helpful to the court members.  Mr. Archambault knew of no authority for either technique, and the stacking at Attica had occurred under very different circumstances.

### B.

Appellant argues that Mr. Archambault's testimony was improperly restricted because Appellant was denied his most effective rebuttal to the tether and pyramid incidents.

An expert witness may provide opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the

14

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." M.R.E. 702. "The military judge has broad discretion as the 'gatekeeper' to determine whether the party offering expert testimony has established an adequate foundation with respect to reliability and relevance." United States v. Green, 55 M.J. 76, 80 (C.A.A.F. 2001), quoted in United States v. Allison, 63 M.J. 365, 369 (C.A.A.F. 2006).

We find that the military judge did not abuse his discretion when he limited Mr. Archambault's testimony to positional asphyxia. The military judge properly determined that Mr. Archambault had an insufficient basis to conclude that the naked human pyramid and the tether around the neck were reasonable uses of force.

VI.

The judgment of the United States Army Court of Criminal Appeals is affirmed.

15

EFFRON, Chief Judge (concurring in part and in the result):

I concur in the result with respect to Issue I.  I concur with the opinion with respect to Issue II.

Issue I, as granted, states:

WHETHER THE MILITARY JUDGE ERRED TO THE
SUBSTANTIAL PREJUDICE OF THE ACCUSED BY FAILING
TO ORDER DISCLOSURE OF MEMOS THAT SET OUT
APPROVED "ENHANCED INTERROGATION TACTICS" FOR
HANDLING DETAINEES IN UNITED STATES CUSTODY.

The threshold question with respect to prejudice is whether the Government provided the defense with timely disclosure of the requested material.  As reflected in the following chronology, the Government provided timely pretrial disclosure of the 2003 Department of Defense Working Group Report on Detainee Interrogations in the Global War on Terrorism [hereinafter 2003 DoD Report], the primary document at issue in the present appeal.

On June 12, 2004, Appellant submitted a pretrial discovery request for the Government to provide a copy of the 2003 DoD Report "detailing the legal obligations of the United States government to refrain from using torture as an interrogation technique and the legal liabilities of government agents who do use such methods."  At that point, the Government denied the request.  On June 21, 2004, defense counsel asked the military judge to order production of the 2003 DoD Report.  The military judge denied the motion on the ground that the defense "[a]t

this time" had not made a sufficient connection to the issues in the trial.  The military judge emphasized repeatedly that his ruling was based on what the defense had "proffered so far," and he advised the defense:  "You are free to renew your request upon a showing of greater relevance than what you've shown so far."

According to an unrebutted affidavit submitted by the Government during the present appeal, the assistant trial counsel provided the defense counsel with the requested 2003 DoD Report on July 22, 2004 -- a point in time more than five months before the beginning of trial on the merits.  The Government's filing directly refutes Appellant's claim that the document was not provided to the defense "prior to, during, or after trial." See Brief of Appellant at 5, United States v. Graner, __ M.J. __ (C.A.A.F. 2010) (No. 09-0432).

Under these circumstances, there was no prejudice, irrespective of the sufficiency of the defense motion or the validity of the military judge's ruling on the motion. Accordingly, I respectfully disagree with the approach to Issue I in the majority opinion, which rejects the Government's filing and proceeds on the assumption that the Government withheld the document.  Graner, __ M.J. at __ (2 n.1, 6 n.2).

Similar considerations apply with respect to the other documents pertinent to Issue I.  Although I disagree with the

decision to reject the defense motion to file these documents on appeal, id., the result is the same because the documents at issue do not establish material prejudice to the substantial rights of Appellant. The 2003 DoD Report, which was provided to the defense at trial, referred to, and relied upon, the 2003 Department of Justice Memorandum. As such, the Department of Justice document was identified with sufficient particularity to alert the defense of its existence at the time of trial, but the defense did not submit a request for production of that document at trial. Moreover, the 2003 Department of Justice Memorandum, and the other reports identified on appeal by the defense, did not contain information that differed in material respects from the information in the 2003 DoD Report that was provided to the defense during trial. The defense did not introduce information from the 2003 DoD Report at trial. Appellant has not established that the information in the other documents would have been more useful to the defense at trial than the information provided to the defense in the 2003 DoD Report. Under these circumstances, any error by the military judge with respect to discovery of these documents did not prejudice the rights of Appellant. See Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006).

BAKER, Judge (concurring in part and dissenting in part):

I agree with the majority's analysis and conclusion with regard to Appellant's motion to compel discovery of the Department of Defense (DoD) report.  This report was specifically requested, was made part of the record, and was not relevant to Appellant's defense, for the reasons stated in the majority opinion.  I also agree with the Court's resolution of the issues pertaining to Major Ponce and Mr. Archambault.  However, I do not agree with the majority's treatment of the issue of discovery of the various other memoranda, and therefore, dissent from that portion of the opinion and note 1 for the reasons that follow.

Appellant raised and this Court granted the issue challenging the military judge's refusal or failure to order discovery of a variety of official government memoranda said to pertain to the handling of detainees.[1]  He has moved to attach these memoranda to the appellate record.[2]  Unfortunately, the

---

[1] Issue I:
> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED BY FAILING TO ORDER DISCLOSURE OF MEMOS THAT SET OUT APPROVED "ENHANCED INTERROGATION TACTICS" FOR HANDLING DETAINEES IN UNITED STATES CUSTODY.

[2] Among other things, the motion to attach included the following:

majority, in a footnote, denies this motion in a perfunctory manner by stating that the documents are not "necessary" and without explaining how it can reach this conclusion without reviewing the documents. I would have granted the motion to attach. Alternatively, if a majority of this Court concluded that it was beyond our authority to attach such documents to the record, a remand to the CCA or an order for a DuBay[3] hearing would have been in order -- or any alternative mechanism, including judicial notice, which could allow for consideration of the documents.[4] In this way, we might have addressed head-on Appellant's allegations that he was operating in a command climate, if he was not following specific instructions, that condoned and tolerated detainee abuse. Given the Court's

---

(a) Memorandum from John C. Yoo, Deputy Assistant Attorney General, Office of Legal Counsel, Dep't of Justice, on Military Interrogation of Alien Unlawful Combatants Held Outside the United States to William J. Haynes II, General Counsel, Dep't of Defense (Mar. 14, 2003).

(b) Major General Geoffrey Miller, Annex 20: Assessment of DoD Counterterrorism Interrogation and Detention Operations in Iraq (U), Taguba Report with Annexes (AR 15-6 Investigation of the 800th Military Police Brigade), available at http://www.dod.gov/pubs/foi/detainees/taguba).

(c) Memorandum from Donald Rumsfeld, Sec'y, Dep't of Defense, on Counter-Resistance Techniques in the War on Terrorism to the Commander, U.S. Southern Command (Apr. 16, 2003).

[3] United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (C.M.A. 1967).

[4] C.A.A.F. R. 30A(b).

refusal to directly address this claim, Appellant is left to allege that he was singled out for prosecution and did not receive a fair trial, writ large.  Further, addressing the claim directly would afford Appellant, and the public, the knowledge that his claim, meritorious or not, was addressed in detail by a federal civilian court.

Instead, Appellant's specific and broader claims have been dismissed with a perfunctory wave of the judicial pen.  True, at the time of trial, Appellant did not describe the memos in question with specificity, or directly link those memos to his conduct.  However, the majority does not explain why, how, or if, Appellant's counsel could have identified these memos with sufficient specificity in order to now support a relevance claim on appeal.  Neither does the majority indicate whether the memos were classified at the time of trial.  More importantly, absent review of the memos, Appellant and the larger audience are left to wonder whether the memos are in some manner relevant to Appellant's broader (and more amorphous) argument regarding command climate.

Of course, these documents can now be described with particularity and are publicly available.  We know what they say, and can address Appellant's relevance arguments in detail.  Instead, Appellant and the larger audience, including the public, the military community, and the victims of Appellant's

3

abuse are left to review the memos on their own and reach their own determinations as to whether or not they were relevant, and in what manner, without benefit of a full judicial vetting and application of legal principles.  The interests of justice and the military justice system would be better served were the documents attached to the record and subject to judicial review.