# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, J.A. FISCHER, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**MARK A. BERGER**
**HOSPITAL CORPSMAN THIRD CLASS (E-4), U.S. NAVY**

**NMCCA 201500024**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 8 October 2014.
**Military Judge:** CDR Robert P. Monahan, JAGC, USN.
**Convening Authority:** Commandant, Naval District Washington, Washington Navy Yard, Washington, DC.
**Staff Judge Advocate's Recommendation:** LCDR J.D. Pilling, JAGC, USN.
**For Appellant:** David P. Sheldon, Esq.; LT Rey Austria, JAGC, USN; LT Jennifer Pike, JAGC, USN.
**For Appellee:** Maj Suzanne Dempsey, USMC; Capt Cory Carver, USMC.

**26 May 2016**

---

## OPINION OF THE COURT

---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Senior Judge:

At a general court-martial, a military judge convicted the appellant, pursuant to his plea, of violating a lawful general order by wrongfully possessing a synthetic cannabinoid compound, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. At the same court-martial, a panel of members with enlisted representation convicted the appellant, contrary to his pleas, of two specifications of rape, one specification of aggravated sexual contact, one specification of abusive sexual contact, and one specification of assault consummated by a battery in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920 and 928. The convening

authority approved the adjudged sentence of 78 months' confinement, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge.

The appellant raises ten assignments of error (AOE).[1] After considering the alleged errors, we are satisfied that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## BACKGROUND

The appellant and Ms. NKB, a Japanese native, met while the appellant was stationed in Okinawa, Japan. Within a year they married, and although they experienced numerous marital problems and contemplated divorce, Ms. NKB later accompanied the appellant to Virginia when he received orders to Marine Corps Base Quantico. Ms. NKB testified that throughout their

---

[1] I. THE MILITARY JUDGE VIOLATED [THE APPELLANT'S] RIGHT TO CONFRONT [THE VICTIM] WHEN HE DENIED THE DEFENSE REQUEST TO USE AN INTERPRETER DURING THE ENTIRE CROSS EXAMINATION OF [THE VICTIM].

II. THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO COMPEL DISCOVERY FOR DOCUMENTS, RECORDS, APPLICATIONS, CASE FILES OR OTHER EVIDENCE IN POSSESSION OF U.S. IMMIGRATION AUTHORITIES RELATED TO THE IMMIGRATION STATUS OF [THE VICTIM].

III. THE TRANSCRIPT FAILS TO INCLUDE THE "LONG PAUSE" MADE BY THE [VICTIM], THUS, THE TRANSCRIPT IS NOT VERBATIM.

IV. THE MILITARY JUDGE ERRED IN EXCLUDING EVIDENCE THAT [THE VICTIM] SUFFERED FROM PTSD UNDER M.R.E. 513.

V. THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE'S MOTION TO COMPEL PRODUCTION OF MR. JOSHUA THOMAS AS [A] WITNESS UNDER R.C.M. 703.

VI. THE MILITARY JUDGE ERRED IN ADMITTING VAST AMOUNTS OF EVIDENCE REGARDING UNCHARGED VERBAL, PHYSICAL, AND SEXUAL ABUSE BY [THE APPELLANT] PURSUANT TO M.R.E. 404 AND 413.

VII. A SERIES OF RULINGS BY THE MILITARY JUDGE SUBSTANTIALLY PREJUDICED [THE APPELLANT'S] RIGHT TO A FAIR TRIAL BY FATALLY LIMITING HIS ABILITY TO CONFRONT [THE VICTIM].

VIII. THE EVIDENCE WAS NOT FACTUALLY SUFFICIENT TO PROVE THAT [THE APPELLANT] WAS GUILTY OF RAPE, AGGRAVATED SEXUAL CONTACT, ABUSIVE SEXUAL CONTACT, AND ASSAULT CONSUMMATED BY A BATTERY.

IX. THE TRIAL COUNSEL'S STATEMENT REGARDING THE MPO WAS MISLEADING TO THE MEMBERS AND UNFAIRLY PREJUDICED [THE APPELLANT].

X. THE MILITARY JUDGE ABUSED HIS DISCRETION BY EXCLUDING CONSTITUTIONALLY REQUIRED EVIDENCE OF [THE VICTIM'S] PAST SEXUAL ABUSE.

We find AOEs VII and IX to be without merit. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

marriage, the appellant physically and sexually assaulted her and engaged in other controlling behavior.

In stark contrast to Ms. NKB's testimony, the defense depicted a marriage in which Ms. NKB was quick to anger, hostile, and suicidal. The defense argued that her primary motivation in marrying the appellant was to obtain financial and immigration benefits, and that she fabricated the allegations against the appellant in retaliation for his pursuit of a divorce as well as for her personal financial and immigration status benefits.

**DISCUSSION**

**Interpreter**

The appellant first argues the military judge erred in denying the defense request to conduct Ms. NKB's entire cross-examination through an interpreter because the ruling infringed upon his constitutional right to confrontation.

Article 28, UCMJ, states that "the convening authority of a court-martial . . . may detail or employ interpreters who shall interpret for the court[.]" RULE FOR COURTS-MARTIAL 501(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) also explains that "interpreters . . . may be detailed or employed as appropriate[.]" There is no requirement that an interpreter be used for the entirety of a witness's testimony.

We apply an abuse of discretion standard when reviewing a trial judge's decision concerning the use of an interpreter. *See United States v. Brown*, 72 M.J. 359, 362 (C.A.A.F 2013); *see also United States v. Eversole*, 1998 CCA LEXIS 618 at *11 (Army Ct.Crim.App. 1998) (citing *United States v. Mayans*, 17 F. 3d 1174, 1179 (9th Cir. 1994); *United States v. Markarian*, 967 F.2d 1098, 1104 (6th Cir. 1992); *United States v. Valladares*, 871 F.2d 1564, 1566 (11th Cir. 1989); *United States v. Coronel-Quintana*, 752 F.2d 1284, 1291 (8th Cir. 1985); *United States v. Tapia*, 631 F.2d 1207, 1210 (5th Cir. 1980); and *United States v. Carrion*, 488 F.2d 12, 14 (1st Cir. 1973)), *aff'd as to findings,* 53 M.J. 132 (C.A.A.F. 2000).

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted). An appellate court "should limit its review to the facts [that were] before the deciding official." *United States v. Gaither*, 45 M.J. 349, 351 (C.A.A.F. 1996). The abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citations and internal quotation marks omitted).

In response to a defense motion to compel, the military judge ordered an interpreter for Ms. NKB's testimony, stating:

The court observes that during the last Article 39(a) session when [Ms. NKB] testified . . . that [Ms. NKB] is not a native English speaker. English is her second

3

language.  However, the court also finds that she understands and can communicate in English.  She has attended college in this country and works in the local economy.

However, the court finds that at times [Ms. NKB] struggled somewhat at the margins to understand the nuance of a question that may have been posed to her, and that the parties and the court may have had some difficulty at the margins understanding her exact response to questions that are posed to her.  So while the court stands by its ruling that [Ms. NKB] was fully able to testify without interpretive assistance during the last Article 39(a) session, the court believes that it may be prudent for the court to order the assistance of a Japanese language interpreter for the development of her testimony at trial.

At times when she may have difficulty understanding a specific question that's put to her or when she is having difficulty testifying to a specific question. The court believes that it's my primary duty to ensure the orderly progress of this trial.  And the court is concerned that if we were in the middle of trial and we had a situation in which [Ms. NKB] had difficulty understanding a specific question or had difficulty expressing a specific response, it could result in undue delay while the government then went out to find an interpreter to assist at that point. And so that's where the court is coming from on this point.[2]

The defense did not object to this ruling, but early in his examination of Ms. NKB, the trial defense counsel requested to use the interpreter for the remainder of his cross-examination. The military judge denied his request, stating, "although . . . slow in her responses, [Ms. NKB] has demonstrated a sufficient command of the English language that interpretive services are not necessary for every question in the cross-examination."[3]  The trial defense counsel then extensively cross-examined Ms. NKB.[4]  With the concurrence of all parties, the interpreter translated for Ms. NKB several times during cross-examination.  We are able to review and understand Ms. NKB's testimony and disagree with the appellant's contention that he was denied his constitutional right to confront Ms. NKB.  All counsel had to cope with the complications of questioning a non-native English speaker. While this, at times, resulted in Ms. NKB's testimony being less than fluid, no question on cross-examination went unanswered.  The interpreter was effectively used as needed.

The military judge's decision to use the interpreter for Ms. NKB's testimony on an as-needed basis was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.  We find the military judge executed his duty to reasonably control the proceedings and did not abuse his discretion by setting parameters on interpreter use during Ms. NKB's testimony.

---

[2] Record at 298-99.

[3] *Id.* at 1019.

[4] Ms. NKB's cross-examination comprised approximately 230 pages of the record.

4

**Immigration Documents**

The trial defense counsel filed a motion to compel the production of Ms. NKB's immigration documents arguing, "[o]ne of our main defense theories is that these allegations arose and are arising out of a desire to maintain her citizenship status. She was facing a divorce. She still had to maintain citizenship through her marriage. She was going to be unable to do so, so she made these claims to get a victim status and to maintain her citizenship status."[5] On 27 June 2014, the military judge directed the Government to subpoena all documents concerning Ms. NKB's immigration status from U.S. immigration authorities. But in response to the subpoena, the United States Citizenship and Immigration Services (USCIS) sent a letter, dated 14 August 2014, stating that pursuant to 8 U.S.C. § 1367(a) it was "statutorily prohibited from producing the requested [documents]."[6] Though 8 U.S.C. § 1367(a)(2) generally prohibits the disclosure of immigration information and these circumstances do not fall within any of the specified statutory exceptions, the Department of Homeland Security has articulated a non-statutory exception for criminal proceedings:

> [D]isclosure may be required in a . . . criminal proceeding for purpose of complying with constitutional obligations to provide exculpatory and impeachment material that is relevant either to guilt or punishment of a criminal defendant in a federal criminal proceeding ("*Brady*" material) or that bears upon the credibility of a prosecution witness ("*Giglio*" material).[7]

At an Article 39a, UCMJ, session, held to address a motion from the victim's legal counsel to quash the subpoena, the trial counsel informed the military judge that the Naval Criminal Investigative Service (NCIS) recently provided "some documents that are immigration-related . . . similar to what the defense is requesting[.]"[8] Afterwards, the military judge ordered the Government to produce all of Ms. NKB's immigration documents currently possessed by NCIS and trial counsel for an *in camera* review. The military judge reviewed 115 pages of material and ordered the Government to provide nine pages to the defense. While it is unclear whether the 115 pages comprised all of Ms. NKB's immigration records, the documents provided to the defense included Ms. NKB's Form I-751, *Petition to Remove Conditions on Residence*, the purpose of which is "for a conditional resident who obtained status through marriage to apply to remove the conditions on his or her residence."[9] This form revealed Ms.

---

[5] Record at 248.

[6] Appellate Exhibit LI at 9.

[7] Department of Homeland Security, "Implementation of Section 1367 Information Provisions." Part VI Policy and Requirements https://www.dhs.gov/sites/default/files/publications/implementation-of-section-%201367-%20information-provisions-instruction-002-02-001_0_0.pdf (last visited May 26, 2016).

[8] Record at 348.

[9] Additional documents released to defense included a redacted copy of a Form I-797C addressed to Ms. NKB, which assigned an application number and informed Ms. NKB of additional requirements before her immigration application could be processed. The defense also received all enclosures to Ms. NKB's I-751. Ruling on Defense Motion for Reconsideration of Rescission of Order to Issue Subpoena dated 8 Sep 2014 at 2.

NKB's request to remain in the United States based on a victim status: "I am a conditional resident spouse who entered a marriage in good faith, and during the marriage I was battered by or was the subject of extreme cruelty by my U.S. citizen or permanent resident spouse or parent."[10]

The military judge determined this documentation provided the defense with sufficient information to advance their theory of Ms. NKB's bias and motive to fabricate, and it was therefore unnecessary to subpoena additional immigration records.[11] The appellant now asserts the military judge erred, arguing, "[w]ithout full knowledge of the content in [Ms. NKB's] immigration records, it was not possible for the military judge to determine whether [her records] contained other evidence that could be *Brady/Giglio* evidence."[12]

We review the military judge's ruling on a request for production of evidence for an abuse of discretion. *United States v. Graner*, 69 M.J. 104, 107 (C.A.A.F. 2010). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted).

Article 46, UCMJ, 10 USC § 846, provides all parties to a court-martial with "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." RCM 701(e) further provides that "[n]o party may unreasonably impede the access of another party to a witness or evidence." RCM 701(a)(6), which implements *Brady v. Maryland*, 373 U.S. 83 (1963), requires the Government to disclose known evidence that reasonably tends to negate or reduce the accused's degree of guilt or reduce the punishment that the accused may receive if found guilty. Evidence that could be used for impeachment is also subject to discovery. *See United States v. Bagley*, 473 U.S. 667, 677-78 (1985) (noting that "the Government's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination" can be a "constitutional error"). "Each party is entitled to the production of evidence that is relevant and necessary." RCM 703(f)(1). R.C.M. 701(a)(2) and (5) also set forth additional duties concerning disclosure of information requested by the defense, including the requirement to permit the defense to inspect any documents "which are within the possession, custody, or control of military authorities . . . and which are material to the preparation of the defense[.]"

The military judge conducted a thorough *in camera* review of Ms. NKB's immigration documents and provided relevant requested material to the defense. These documents supported the defense contention that Ms. NKB applied for immigration status as a battered spouse. They allowed the defense to argue their theory of the case that Ms. NKB fabricated allegations against the appellant based on concerns over her immigration circumstance should the couple divorce.[13]

---

[10] AE LXXXVIII.

[11] *Id*. at 2.

[12] Appellant's Brief of 28 Jul 2015 at 18.

[13] Record at 1095, 1097, 1100, 1101, 1103, 1729.

The appellant failed to show, at trial and on appeal, what new, relevant information would have been provided by documents held by USCIS, or even that USCIS possessed documents beyond the 115 pages of materials reviewed by the military judge. The military judge did not abuse his discretion in addressing the defense request for Ms. NKB's immigration records. For the same reasons, we find no *Brady* or *Giglio* violation in this instance.

**Verbatim Transcript**

The appellant next avers that the transcript is not verbatim because it failed to reflect "long pauses" Ms. NKB took before answering questions during her testimony. We disagree.

Whether a transcript is verbatim is a question of law we review *de novo*. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citing *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000)). According to RCM 1103(b)(2)(B):

> [T]he record of trial shall include a verbatim transcript of all sessions except sessions closed for deliberations and voting when: (i) Any part of the sentence adjudged exceeds six months confinement, forfeiture of pay greater than two-thirds pay per month, or any forfeiture of pay for more than six months or other punishments that may be adjudged by a special court-martial; or (ii) A bad-conduct discharge has been adjudged.

Thus, a verbatim transcript is required based upon the appellant's sentence.

"A verbatim transcript includes: all proceedings including sidebar conferences, arguments of counsel, and rulings and instructions by the military judge[.]" RCM 1103(b)(2)(B), Discussion. "Despite the dictionary definition of the term 'verbatim,' transcripts need not be '[w]ord for word,' but must be 'substantially verbatim.'" *Davenport*, 73 M.J. at 377 (alterations in original) (quoting *United States v. Lashley*, 14 M.J. 7, 8 (C.M.A. 1982). "[I]f we insisted inflexibly on [a word for word] standard, every record could be assailed as deficient." *United States v. Nelson*, 13 C.M.R. 38, 42 (C.M.A. 1953). "As such, a transcript may be deemed 'substantially verbatim' though it has certain omissions." *Davenport*, 73 M.J. at 377.

"[O]missions are qualitatively substantial if the substance of the omitted material 'related directly to the sufficiency of the Government's evidence on the merits,' and 'the testimony could not ordinarily have been recalled with any degree of fidelity.'" *Id.* (quoting *Lashley*, 14 M.J. at 8). "Omissions are quantitatively substantial unless 'the totality of omissions . . . becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness.'" *Id.* (quoting *United States v. Nelson*, 13 C.M.R. 38, 43 (C.M.A. 1953)).

In *Davenport*, the transcript omitted the entire testimony of a Government merits witness. *Id.* The court concluded "the omission was substantial both quantitatively, because the entire testimony was omitted, and qualitatively, because the substance of the omitted testimony presumably relates directly to the Government's evidence on the merits and could not be recalled with fidelity." *Id.* (citations omitted).

7

Here, Ms. NKB's entire testimony is included in the transcript. We find the omission of any notation that she paused before answering a question neither qualitatively nor quantitatively substantial.[14] The record reflects each time the interpreter was used as well as any necessary clarifications during Ms. NKB's testimony. The witness's difficulty communicating was clear in the record even absent any explicit mention of pauses, eliminating any impact of such an omission. Thus, we decline to grant relief on this AOE.

**Prior Sexual Abuse and Post Traumatic Stress Disorder (PTSD) Evidence**[15]

In a supplemental brief, the appellant alleges the military judge abused his discretion by excluding constitutionally required evidence of Ms. NKB's past sexual abuse. The trial defense counsel attempted to admit evidence that Ms. NKB was sexually abused by her father as a child. The appellant alleges this evidence would have established "three important points":

Ms. NKB's medical history of PTSD disorder stemming from being sexually abused by her father provided an alternate source of trauma that required her hospital visits, as well as explained her animus towards consensual sexual contact with HM3 Berger;

Ms. NKB may have suffered from Borderline Personality Disorder (BPD), which would explain her tendency to make and withdraw allegations of sexual assault against HM3 Berger; and

Such evidence would have demonstrated Ms. NKB's motive to fabricate allegations given that she had received financial and emotional support when she revealed her childhood trauma to others.[16]

"We review the military judge's ruling on whether to exclude evidence pursuant to M.R.E. 412 for an abuse of discretion." *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citing *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010)).

---

[14] We do note that the record indicates "[No Response]" from Ms. NKB on 81 occasions at 880, 882, 883, 885, 886, 887, 896, 897, 898, 901, 903, 904, 905, 919, 927, 933, 934, 945, 947, 948, 953, 957, 958, 959, 960, 961, 963, 968, 971, 1010, 1014, 1023, 1050, 1052, 1065, 1070, 1076, 1087, 1094, 1108, 1124, 1125, 1126, 1127, 1143, 1144, 1146, 1147, 1149, 1168, 1169, 1203, 1207, 1222, 1226, 1248, 1332, 1340, 1341, 1355, 1371, 1404, 1410, 1411, 1412, 1413, 1454, 1456.

[15] In his initial brief, the appellant cites to MILITARY RULE OF EVIDENCE 513, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), in arguing the military judge erred when he failed to admit evidence that Ms. NKB suffered from PTSD. Appellant's Brief at 21-24. At trial, the military judge determined the admissibility of this evidence under MIL. R. EVID. 412 and other applicable evidentiary rules, not MIL. R. EVID. 513. We take the same approach and find MIL. R. EVID. 513 inapplicable to this analysis.

[16] The appellant sought to admit testimony of Dr. Smullen regarding how Ms. NKB's prior abuse "could color her current account," how Ms. NKB "might suffer from" BPD, and how prior "trauma can lead" people to make false accusations. Appellant's Supplemental Brief of 3 Feb 2016 at 5. We agree with the military judge's determination that Dr. Smullen's proposed testimony was "wholly speculative, unfounded in the facts, and not supported in the diagnostic criteria for [BPD]." AE LXXXIII. Dr. Smullen never examined Ms. NKB and had no evidence that Ms. NKB was ever diagnosed with BPD. It would be entirely inappropriate to admit testimony to speculate as to how Ms. NKB *may* have suffered from a disorder that *could* have resulted in false allegations.

8

Under MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), evidence offered by the accused to show that the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions. The third exception states that the evidence is admissible if "the exclusion of [it] would violate the constitutional rights of the accused." MIL. R. EVID. 412(b)(1)(C). If there is a theory of admissibility under one of the exceptions, the military judge, before admitting the evidence, must conduct a balancing test as outlined in MIL. R. EVID. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011).

The test is whether the evidence is "relevant, material, and [if] the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318 (citation omitted). Relevant evidence is any evidence that has "any tendency to make a fact more or less probable than it would be without the evidence[.]" MIL. R. EVID. 401. Evidence is material if it is "of consequence to the determination of appellant's guilt[.]" *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted).

> In determining whether evidence is of consequence to the determination of Appellant's guilt, we consider the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of other evidence in the case pertaining to this issue.

*United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

If evidence is relevant and material, it must be admitted where its probative value outweighs the dangers of unfair prejudice. *See* MIL. R. EVID. 412(c)(3). "Those dangers include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Ellerbrock,* 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). If the evidence survives the inquiry, a final consideration is whether the evidence in the record supports the inference on which the moving party is relying. *Id.* (noting, in support of court's holding, that failure to admit testimony that the victim had engaged in an extramarital affair was reversible error, that other evidence in "the record indicated" the victim "did not want her marriage to end").

The appellant argues the omitted evidence was constitutionally necessary to challenge Ms. NKB's credibility by impeaching Ms. NKB and "providing alternate explanations for her behavior."[17] While the right to cross-examine includes the right to impeach or discredit a witness, "'the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). "[T]rial judges retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Ellerbrock*, 70 M.J. at 318 (citations and internal quotation marks omitted).

---

[17] AE LXXXIII.

9

In *United States v. Sojfer*, 47 M.J. 425, 428 (C.A.A.F. 1998), the Court of Appeals for the Armed Forces (CAAF) addressed a similar argument that evidence of the victim's prior rape, "should be admitted because a rape victim is more likely to be biased." While bias and the capacity to observe, remember, and recollect are grounds for impeachment, the proponent of the evidence "must lay a foundation that establishes the legal and logical relevance of the impeaching evidence." *Id.* at 427 (citations omitted). The CAAF found the defense's theory to be purely speculative and lacking support for the idea that "a prior rape showed bias or would have an impact on the victim's ability to feel or remember." *Id.* at 428. *See also United States v. Velez*, 48 M.J. 220, 227 (C.A.A.F. 1998) (holding that a prior report of rape was not relevant to attack the credibility of complaint in this case); *United States v. Rogers*, 2005 CCA LEXIS 143 at *32 (A.F.Ct.Crim App. 2005) ("[W]e are not persuaded the evidence is relevant. The defense has not demonstrated how a prior report of rape against another person undermines [the victim's] credibility concerning the events involving the appellant.").

So too here. We agree with the military judge's determination that the defense failed to establish a logical connection between Ms. NKB's previous victimization or her history of PTSD and the appellant's case. The defense merely generally proffered that a person's perception, understanding, or recollection could be impaired as a result of PTSD or prior abuse. Thus, this solely speculative evidence was properly excluded.

**Witness Production**

Prior to trial, the defense moved to compel the production of Ms. NKB's ex-husband, Mr. JT, as a witness, arguing his testimony was relevant and necessary to establish: (1) Ms. NKB possessed a firm and fluent grasp of the English language, thus any language difficulties she displayed during her testimony were fabricated in order to avoid answering questions; (2) Ms. NKB's detailed understanding of the U.S. immigration laws, exhibiting her bias and motive to misrepresent under MIL. R. EVID. 608; (3) Ms. NKB's character for manipulation; (4) Ms. NKB's specific acts of extortion and blackmail of Mr. JT under MIL. R. EVID. 404(b); and (5) Ms. NKB contacting Mr. JT via Facebook to convince him not to testify.[18]

The military judge denied the defense motion, concluding "that the defense has failed to establish that [Mr. JT's] testimony would be admissible and, in turn, fails to establish that he must be produced as a relevant and necessary witness."[19] The military judge further addressed each of the defense's proffered bases for admission.

The military judge found the proffered testimony regarding Ms. NKB's English fluency inadmissible, specifically rejecting the defense contention of admissibility under MIL. R. EVID. 404(b) or, alternatively, under MIL. R. EVID. 608(c). The military judge further concluded that any probative value "[was] substantially outweighed by the danger of confusion of the issues and waste of time . . . especially in light of the court's decision to order a Japanese-language

---

[18] AE XC.

[19] Record at 579.

interpreter to be present to assist with the development of [Ms. NKB's] testimony if necessary."[20]

Regarding the proffered testimony of Ms. NKB's understanding of U.S. immigration laws, the military judge found

> Ms. [NKB]'s decision to affirmative [sic] apply for removal of conditions on her residence in the United States based on allegedly being battered by or being the subject of extreme cruelty by the [appellant] constitutes a motive to fabricate against the [appellant]. . . . Her knowledge [in this area] is demonstrated conclusively by her election of victim status in her immigration application. However, her overall knowledge of U.S. immigration laws in and of itself does not give rise to bias and/or a motive to misrepresent against the accused.[21]

Thus, the military judge found the defense failed to establish relevance in this regard and further concluded, any probative value from such testimony was "substantially outweighed by the danger of confusion of the issues and waste of time."[22]

Next, addressing the proffered testimony regarding "character for manipulation," the military judge found that the defense's attempt to offer this "propensity evidence": (1) "[did] not fall within any of the exceptions delineated under [MIL. R. EVID.] 404(a)(2)"; (2) was improper reputation or opinion evidence of a character for truthfulness or untruthfulness under MIL. R. EVID. 608(a); and (3) was improper under MIL. R. EVID. 608(c) to show bias, prejudice, or motive to fabricate.[23]

The military judge specifically rejected the defense argument that Mr. JT's proffered testimony about Ms. NKB's prior alleged acts of extortion and blackmail were admissible to show a common plan or scheme under MIL. R. EVID. 404(b). The military judge found that the defense had failed to establish a nexus between the prior alleged acts toward Mr. JT and the facts of this case, reasoning,

> [a]lthough [Ms. NKB] ultimately decided to report the alleged sexual and physical abuse [the appellant] allegedly committed against her and to seek removal of conditions on her residence in the United States based on allegedly being battered by or being the subject of extreme cruelty by [the appellant], there is no evidence before this court that she did so after attempting to extort or blackmail [the appellant].[24]

---

[20] *Id.* at 580.

[21] *Id.* at 581.

[22] *Id.* at 582.

[23] *Id.* at 582-83.

[24] *Id.* at 583-84.

Finally, while the military judge "held open the possibility for the defense to cross-examine [Ms. NKB on her communications with Mr. JT about testifying], [the military judge] did not permit the defense to present extrinsic evidence in the form of [Mr. JT's] testimony"[25] on this issue. The military judge also found Mr. JT's proffered testimony on this issue failed a MIL. R. EVID. 403 balancing test because it would further confuse the issue and waste time.

The appellant avers that the military judge erred in denying the defense's motion to compel the production of Mr. JT. RCM 703(a) gives the prosecution and defense "equal opportunity to obtain witnesses and evidence, including the benefit of compulsory process." RCM 703(b) dictates that "[e]ach party is entitled to the production of any witness whose testimony on a matter in issue . . . would be relevant and necessary." The burden of persuasion to show the evidence is relevant and necessary is on the moving party—the appellant in this instance. RCM 905(c)(2)(A). "A military judge's ruling on a request for a witness is reviewed for abuse of discretion." *United States v. McElhaney*, 54 M.J. 120, 126 (C.A.A.F. 2000) (citing *United States v. Rockwood*, 52 M.J. 98, 104 (C.A.A.F. 1999)). This court will not set aside a military judge's denial of a witness request unless we have a "definite and firm conviction" that the judge "committed a clear error of judgment[.]" *Id.* (citation and internal quotation marks omitted).

We find that the military judge did not abuse his discretion in denying the defense motion to compel Mr. JT's production as a witness. The military judge provided a thorough and cogent analysis, addressing each of the defense's bases for Mr. JT's proffered testimony and why each ultimately proved insufficient to compel production. We agree with the military judge that Mr. JT's proffered testimony was neither relevant nor admissible. We further agree that any limited probative value for such testimony was remote and far outweighed by the danger of confusing the issues and/or wasting the fact-finder's time. Thus, we decline to grant relief on this AOE.

**Uncharged Misconduct**

Prior to trial, the Government moved the court, *in limine,* to rule on the admissibility of a significant amount of uncharged conduct—physical, psychological, and sexual abuse—that the appellant allegedly committed against Ms. NKB. In a 23-page written ruling, the military judge concluded nine instances of alleged sexual abuse by the appellant against Ms. NKB were admissible under MIL. R. EVID. 413.[26] At trial, Ms. NKB testified regarding four of the admitted instances of sexual abuse.[27] Additionally, the military judge ruled that 12 acts of alleged

---

[25] *Id.* at 584-85.

[26] The military judge found five other alleged instances of sexual abuse by the appellant against Ms. NKB failed the MIL. R. EVID. 403 balancing test or were otherwise inadmissible.

[27] Ms. NKB testified about the following acts deemed admissible by the military judge: (1) Between October and November 2011 the appellant forced Ms. NKB to engage in sexual intercourse when she came home from work during lunch break. Record at 896-97; (2) In November or December 2011 while driving between Pennsylvania and Quantico, the appellant grabbed Ms. NKB's breast and touched her private parts. *Id.* at 928-29; (3) In November 2012, in the bedroom of their home in Virginia, the appellant woke Ms. NKB and unsuccessfully attempted to engage in anal sex over her objection and then engaged in vaginal intercourse over her objection. *Id.* at 965-66; and (4) In November 2012 in the basement of their Virginia home, the appellant grabbed Ms. NKB's breasts and groin while masturbating after she refused his request to have intercourse because she was menstruating. *Id.* at 963.

12

physical and psychological abuse by the appellant toward Ms. NKB were admissible under MIL. R. EVID. 404(b).[28]

*Evidence of Uncharged Sexual Misconduct*

MIL. R. EVID. 413(a) states, "[i]n a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." We review a military judge's decision to admit evidence pursuant to this rule for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). "[I]nherent in M.R.E. 413 is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citation omitted).

Before admitting evidence under MIL. R. EVID. 413, three initial threshold requirements must be met: (1) the accused is charged with a sexual offense within the meaning of MIL. R. EVID. 413(d); (2) the proffered evidence is evidence that the appellant committed another sexual offense within the meaning of MIL. R. EVID. 413(d); and (3) the proffered evidence is logically relevant under both MIL. R. EVID. 401 and 402. *Solomon*, 72 M.J. at 179 (citing *Berry*, 61 M.J. at 95 and *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000)). To meet the second requirement, the military judge must conclude that the members "could find by [a] preponderance of the evidence that the offenses occurred[.]" *Wright*, 53 M.J. at 483 (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

The military judge found the threshold requirements were met.[29] The military judge must then apply a balancing test under MIL. R. EVID. 403 to determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice. *Solomon*, 72 M.J. at 179-80 (citing

---

[28] The acts he found admissible were: (1) In October or November 2010, in the "tatami room" of their home, the appellant pushed Ms. NKB to the floor while cursing at her. The appellant pressed his foot on Ms. NKB's face, telling her to "smell it" and poured water on her face. Record at 903-05; (2) While living in their home in Japan, the appellant entered the bathroom while Ms. NKB was showering and then "peed on her legs and feet." *Id.* at 907-08; (3) While Ms. NKB was attending a women's group at her church, the appellant arrived and began yelling at her because she had not answered her phone. *Id.* at 894-95; (4) While Ms. NKB worked in Japan, the appellant continuously called her on the phone to the point that her manager told her to not talk on the phone. *Id.* at 895; (5) The appellant got mad at her for speaking to her brother in Japanese and accused her of cheating. *Id.* at 906; (6) The appellant took photos of Ms. NKB without her permission while she showered and told her she was fat. *Id.* at 907; (7) The appellant told Ms. NKB that no one would believe her if she reported his actions because everyone thinks he is a nice guy and she is psycho. *Id.* at 908; (8) While living in Virginia the appellant told Ms. NKB that she could not get a driver's license because she did not have a social security number. *Id.* at 935; (9) The appellant told Ms. NKB she could not sign their apartment lease in Virginia because she did not have a social security number and she could not get one because she was not a U.S. citizen. *Id.* at 934; (10) The appellant threatened to kick Ms. NKB out of the U.S. and keep her son because her son was a U.S. citizen. *Id.* at 933; (11) Although Ms. NKB had an international driver's license the appellant only let her use the car when he was in a good mood. *Id.* at 935; (12) Ms. NKB had to rely on the appellant to log her onto the computer and he would only do so when he was in a good mood. *Id.* at 937-38. The military judge found 13 additional alleged instances of physical and psychological abuse failed the MIL. R. EVID. 403 balancing test or were otherwise inadmissible.

[29] AE LIX at 8-9.

13

*Berry*, 61 M.J. at 95). When conducting this balancing test, "the military judge should consider the following non-exhaustive factors":

> (1) strength of proof of the prior act (i.e., conviction versus gossip);
> (2) probative weight of the evidence;
> (3) potential for less prejudicial evidence;
> (4) distraction of the factfinder;
> (5) time needed for proof of the prior conduct;
> (6) temporal proximity;
> (7) frequency of the acts;
> (8) presence or lack of intervening circumstances; and
> (9) the relationship between the parties.

*Solomon*, 72 M.J. at 180 (citing *Wright*, 53 M.J. at 482). If the "balancing test requires exclusion of the evidence, the presumption of admissibility [that is inherent within MRE 413] is overcome." *Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482-83). "When a military judge articulates his properly conducted M.R.E. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion." *Solomon*, 72 M.J. at 180 (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

The appellant does not dispute the military judge's ruling regarding the first and third threshold requirements, but asserts that the Government failed to demonstrate the second requirement by a preponderance of the evidence.[30] Similar to his argument at trial, the appellant contends that the sole proponent of the uncharged conduct, Ms. NKB, "had a strong motive to fabricate in order to obtain financial and immigration benefits."[31] The appellant further asserts that the MIL. R. EVID. 403 balancing test favors exclusion rather than admission of the evidence.

The military judge found, "[t]he probative weight of the evidence [of the uncharged offenses] is strong as it contextualizes the relationship between [the appellant] and [Ms. NKB] and provides critical information to the members regarding [the appellant's] motivations and intentions with regard to his alleged sexual offenses[.]"[32] We find Ms. NKB's testimony sufficient to meet the required preponderance standard. Additionally, the military judge properly performed a MIL. R. EVID. 403 analysis, considering the nine non-exhaustive factors outlined above. We have carefully reviewed the military judge's thorough written ruling on this matter. His findings and conclusions are not arbitrary, fanciful, clearly unreasonable, or clearly erroneous, nor are they influenced by an erroneous view of the law. Thus, we conclude the military judge did not abuse his discretion in admitting evidence of uncharged sexual offense pursuant to MIL. R. EVID. 413.[33]

---

[30] Appellant's Brief at 37-38

[31] *Id.* at 38.

[32] AE LIX at 9.

[33] The military judge further clarified his ruling because he determined it would be improper to rely on MIL. R. EVID. 413 sexual offense evidence to prove a nonsexual offense. Thus, he informed the parties that he would not instruct

14

*Evidence of Physical or Psychological Abuse*

While "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" it may be admissible to prove, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MIL. R. EVID. 404(b)(1) and (2). Essentially, evidence of this type must be offered for a proper purpose other than to demonstrate the propensity of an accused to commit the crimes charged. *United States v. Acton*, 38 M.J. 330, 333 (C.M.A. 1993) (citing *United States v. Castillo*, 29 M.J. 145, 150 (C.M.A. 1989). We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010).

In order to admit evidence of uncharged misconduct under MIL. R. EVID. 404(b): (1) the evidence must reasonably support a finding that the accused committed the uncharged misconduct; (2) a material fact in issue must be made more or less probable by the evidence; (3) the danger of unfair prejudice must not substantially outweigh the probative value of the evidence. *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989).

In applying the *Reynolds* test, the military judge determined that (1) Ms. NKB's testimony regarding the uncharged acts of abuse will reasonably support a finding by the members that the accused committed the acts; (2) evidence of the uncharged offenses allegedly committed against the same victim as the charged offenses is relevant to establish the accused's motive to commit the charged offenses, which is his hostility toward Ms. NKB as well as his intent and plan to control and dominate his spouse; and (3) the probative weight of the evidence is strong as it contextualizes the relationship between the accused and the alleged victim, is probative of the appellant's motive and/or plan and not unfairly prejudicial under MIL. R. EVID. 403. The military judge concluded that the evidence of prior acts met all the requirements of the *Reynolds* test and was therefore admissible.[34]

The first *Reynolds* prong requires that a preponderance of the evidence reasonably supports a finding that the appellant committed the uncharged acts. *United States v. Morrison*, 52 M.J. 117, 121-22 (C.A.A.F. 1999) (citing *Huddleston*, 485 U.S. at 690). Here, Ms. NKB testified about uncharged acts, which if believed, would support a finding that the appellant committed the acts. The military judge found the witnesses to be credible and thus we find the threshold test is satisfied.

In applying the second *Reynolds* prong, we first consider the logical relevance of the uncharged acts as evidence of the appellant's motive and plan to physically and sexually assault Ms. NKB. *See United States v. Barnett*, 63 M.J. 388, 394-96 (C.A.A.F. 2006). Motive for a criminal act tends to answer why an accused committed the charged act. *United States v. Jenkins*, 48 M.J. 594, 598 (Army Ct.Crim.App. 1998). Evidence of motive is relevant "to show the doing of an act by a person as an outlet for [an] emotion. . . . However, the prior acts of conduct must be the type which reasonably could be viewed as 'the expression and effect of the existing

---

the members that evidence of a sexual offense could be used to prove a nonsexual offense. The parties concurred. Record at 667.

[34] AE LIX at 12, 16.

internal emotion.'. . . Moreover, this same motive must be shown to have existed in appellant at the time of the subsequent charged acts." *United States v. Watkins*, 21 M.J. 224, 227 (C.M.A. 1986) (citations omitted). "Plan is a commonality of purpose that links otherwise disparate [acts] as stages in the execution of a singular scheme." *Jenkins*, 48 M.J. at 600. In analyzing a plan we consider "whether the uncharged acts establish a 'plan' of which the charged act is an additional manifestation, or whether the acts merely share some common elements." *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004) (citations omitted).

The uncharged acts to which Ms. NKB testified amount to more than sporadic instances of jealousy or possessiveness; rather, these acts reasonably reflect the appellant's strong desire to dominate and control Ms. NKB, including his desire for sexual control. The evidence was probative of a motive to physically and sexually assault Ms. NKB, that the charges of rape and sexual assault may be viewed logically as an ultimate expression of an emotion or desire to dominate and control Ms. NKB, and that numerous acts of such domination and control are also evidence of the appellant's plan - with the physical and sexual assault of Ms. NKB being a logical additional manifestation of that plan.

In applying the third *Reynolds* prong, the military judge found this evidence legally relevant and, after conducting the MIL. R. EVID. 403 balancing test, determined its probative value was not substantially outweighed by the danger of unfair prejudice. We find that the military judge did not abuse his discretion in admitting the testimony as proof of motive and plan under MIL. R. EVID. 404(b).

## Factual Sufficiency

We review issues of factual sufficiency *de novo*. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). We take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our factual sufficiency determination is limited to a review of the "entire record," meaning evidence presented at trial. *United States v. Bethea*, 46 C.M.R. 223, 225 (C.M.A. 1973); *see also United States v. Reed*, 54 M.J. 37, 44 (C.A.A.F. 2000).

Proof beyond a reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001). The fact finder may believe one part of a witness's testimony and disbelieve another. *Id.* When weighing the credibility of a witness, this court, like a fact finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake, such as a lapse of memory, or a deliberate lie. *Id.* at 844.

The appellant attacks the factual sufficiency of all the guilty findings arguing that the entire Government case was built on Ms. NKB's unreliable testimony. The appellant again raises Ms. NKB's bias and motive to fabricate:

16

[Ms. NKB] had a strong motive to fabricate because she married [the appellant] for "money and citizenship." [The appellant] sponsored her immigration application to be a permanent resident in the United States. If they divorced she believed the sponsorship would disappear. By alleging abuse in her marriage, [Ms. NKB] became eligible for lawful permanent resident status in her own right. This is a very strong motive to fabricate the allegations in this case.[35]

The trial defense counsel made the same argument at trial:

[w]hat'd she tell you about immigration? At one point she said she didn't want to be an American? She didn't need [the appellant's] signature? And then on August 10th—and it's in the evidence. On August 10th she takes the form; she turned it in. She signed it; she dated it; she elected the victim status. Why wouldn't she just do divorce? She doesn't know [what the appellant's] going to say. She doesn't know if he's going to say if it's a sham marriage. She doesn't know if he's going to say, "I think she just married me for the citizenship." She doesn't have to worry about that if she claims to be a victim.[36]

From opening statements through the presentation of evidence and again in closing argument, the appellant's theory that Ms. NKB fabricated all the allegations against him for her personal financial and immigration status benefit was fully presented to and rejected by the members with respect to the offenses for which they convicted the appellant. We also find Ms. NKB's testimony sufficiently credible to justify these convictions. After weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

## Conclusion

The findings and sentence are affirmed. The supplemental court-martial order shall reflect the appellant's guilty plea to Additional Charge I and its sole specification.[37]

Chief Judge BRUBAKER and Judge CAMPBELL concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[35] Appellant's Brief at 41 (internal citations omitted).

[36] Record at 1729.

[37] *United States v. Crumpley*, 49 M.J. 538 (N.M.Ct.Crim.App 1998).