CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 DONOVAN D. BROOKS**
**United States Army, Appellant**

ARMY 20180567

Headquarters, 8th Theater Sustainment Command
Kenneth W. Shahan, Military Judge
Colonel Ryan B. Dowdy, Staff Judge Advocate

For Appellant: Steven P. Shewmaker, Esquire (argued);[1] Lieutenant Colonel Tiffany D. Pond, JA; Captain Benjamin A. Accinelli, JA; Captain Zachary A. Gray, JA (on brief); Captain Zachary A. Gray, JA; Steven P. Shewmaker, Esquire (on reply brief); Catherine E. Godfrey, JA.

For Appellee: Captain Christopher K. Wills, JA (argued);[1] Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain Brian Jones, JA; Captain Christopher K. Wills, JA (on brief).[1]

29 October 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BROOKHART, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of one specification of wrongful distribution of marijuana, one specification of wrongful use of marijuana, and one specification of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [UCMJ]. Contrary to his pleas, an enlisted panel sitting as a general court-martial convicted appellant of three specifications of rape of a child, in violation of Article 120b, UCMJ. The panel sentenced appellant to be discharged

------------------------------------
[1] Corrected

from the service with a dishonorable discharge, and to be confined for twenty-five years. The convening authority approved the sentence as adjudged.

On appeal, appellant raises three assignments of error.[2] While one assignment of error merits discussion, none warrant relief.[3]

## BACKGROUND

On 19 April 2017, a fifteen-year-old native of Hawaii named KB ran away from home over a dispute with her parents. Later the next day, KB went to a McDonald's restaurant to "have a roof over [her] head." She did not have any money and had not eaten since she left home. Inside the McDonald's, she met Private (PVT) Justin Vega and they talked for a short time. KB later left the restaurant and encountered PVT Vega outside sitting with appellant in his car. As they talked, KB told appellant and PVT Vega that she had run away from home and that her parents were looking for her. She also lied and said she was sixteen years old when she was in fact only fifteen. At some point, PVT Vega gave KB $20.00 for food. PVT Vega and appellant also shared drinks from a bottle of vodka with KB while in the McDonald's parking lot. As they talked, another friend of KB approached and offered KB some cocaine residue in a bag. KB ingested a small amount of the cocaine residue in the presence of appellant and PVT Vega. At some point thereafter, PVT Vega offered to let KB shower in his barracks room and KB accepted.

Appellant and PVT Vega then drove KB to appellant's barracks on the installation. KB did not have identification, so the two servicemembers had her hide while they entered post. When they arrived at appellant's barracks, they escorted KB in through a side door and then on to PVT Vega's room. Appellant then went to his own room, leaving KB and PVT Vega alone.

KB took a shower in PVT Vega's barracks room. After she showered, she had consensual sexual intercourse with PVT Vega because she felt she owed him for giving her a place to stay. After they had sex, PVT Vega called appellant and asked him to come to PVT Vega's room with the bottle of vodka they had shared earlier. When appellant arrived, the three of them passed the bottle of vodka around and drank it until the bottle was empty.

---

[2] Appellant asserts that: (1) his convictions for rape of a child are legally and factually insufficient; (2) his sentence is highly disparate; and (3) the military judge erred in admitting a "missing" poster and other photos of the alleged victim.

[3] We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

According to her testimony, the next thing KB remembered was waking to PVT Vega having vaginal intercourse with her. She did not remember PVT Vega asking to have sex with her or even talking about it. When she woke up, appellant was to her right with his clothes off. Appellant placed his penis in KB's mouth for a period of time and then penetrated her vaginally and anally. KB testified that appellant pulled her hair and hit her while his penis was in her mouth. KB testified that she was crying and told both appellant and PVT Vega, "no." Appellant and PVT Vega responded that she was "overreacting" and that "this is a way to [have] college fun." KB further testified that when appellant penetrated her anus, it felt "horrible," "painful," and "just bad."

Eventually appellant left PVT Vega's room. KB went in the bathroom and saw blood on her thighs and around her private area. She got dressed and borrowed appellant's phone to call a friend for help but he did not answer. After leaving a voicemail for her friend, PVT Vega called a rideshare company to take KB back to the McDonald's where she first encountered appellant. It was approximately 0400 hours. KB used the money PVT Vega had given her to order food. She eventually left the McDonald's and loitered in the area for a period of time. Later, she went to her girlfriend's house and spent some time there.

Over the course of the three days KB was gone, her parents were worried and were looking for her. Shortly after KB left, her mother, Mrs. AB, created a computer document with a recent picture of KB and the words "Missing Runaway" in bold at the top. Below the title was a description of the clothes KB was wearing. The document also included basic biographical data about KB, to include her height and birthday. Rather than physically distribute the flyer, KB's mother posted it on a Facebook group where the local community listed items that were stolen or otherwise missing. According to Mrs. AB's testimony, she did this on the same day KB was in the barracks with appellant and PVT Vega.

Sometime the next day, someone who had seen the posting on Facebook believed they spotted KB in an area near the McDonald's. The individual took two pictures of KB sitting against a wall covered with graffiti. She was wearing the clothes she had been wearing since she ran away from home. The individual sent the digital images to KB's mother who then sent KB's older brother to search in that area.

After visiting her girlfriend, KB got on a city bus so she had a place to stay. Eventually, she was spotted on the bus by her older brother, who was in the area based upon the photographs of KB. KB's brother stopped the bus and retrieved KB. Approximately a day later, KB reported the sexual assault to her mother. KB was taken to a hospital for a sexual assault examination and vaginal swabs were taken to be tested. Her clothing was taken by investigators and tested for forensic evidence. Appellant's DNA was found in the crotch of KB's leggings. Appellant was

interviewed by investigators. Initially, he lied and said that he did not have sexual intercourse with KB. However, he later changed his story and admitted that he indeed had sexual intercourse with KB.

At trial, over defense objection, the military judge admitted the missing poster created by KB's mother and the two photographs taken by the individual who saw KB the day after she was sexually assaulted by appellant and PVT Vega. Appellant now alleges this was error. We disagree.

## LAW AND DISCUSSION

Mrs. AB was the first witness called by the government. The government used Mrs. AB to admit the missing poster and the two photos of KB sitting against the concrete wall. The following exchange preceded the admission of the missing poster:

> MJ: What is the relevance?
>
> ATC2: Your Honor, the relevance of this poster is that—well its twofold, it was posted at the time that [KB] was missing, it is relevant to show that while this 15-year-old parents were searching for her and posting pictures, she was simultaneously, in the barracks being taken by the accused. So it is relevant to show that one, she was missing; to support the fact she was, in fact, a 15-year-old child, and the fact that they are searching for her but can't find her because she is in the accused's barracks room, essentially, undergoing the rape that we have alleged. . . .
>
> ADC: Your Honor, my client is not charged with kidnapping and there is no relevance to a photograph—of a missing photograph to any of the charged offense[s].
>
> MJ: Government, you've already got this witness explaining that [KB] ran away. I assume [KB] is going to testify to the same thing, so I don't see the probative value of this poster that was made.
>
> ATC2: Your Honor, it also shows [KB] at this age, which is extremely important in this case. It is a picture of [KB] when she was 15, obviously, she is older now, Your Honor. . . .

4

ADC: Your Honor, the 403— the probative value is not such that it would outweigh the prejudice that the photograph would cause. It implicates to the panel, Your Honor, that somehow my client and [PVT] Justin Vega abducted [KB].

MJ: I don't think it does. My concern originally was that it had almost no probative value. I don't see any prejudice to your client, however, from the photo coming in. I am on the fence purely on the issue of if it is probative at all, however, there being a photograph on it, I could see the probative value. In the event that there is a lesser-included offense here it might mean mistake of fact as to age becomes irrelevant [sic].

ATC2: Your Honor, the government believes that the defense intends to bring that into play, Your Honor. That is part and parcel to the reason that this is being offered, which makes it extremely probative.

MJ: I expect it to come into play. My basic understanding of the facts in this case is that she told them she was 16.

ATC: Yes, sir.

MJ: That right there is going to bring that into play in the event there is a lesser included [offense is] triggered in this case. . . .

ADC: If that is the case they can use another photograph. They could take the other information off of it and use the photograph itself, but the rest of the information seems to me to be prejudicial. It's almost seems like, you know, there was this missing female and they had knowledge that she was missing, he abducted her, and took her to the barracks. It makes—to me the panel could draw that inference.

MJ: Okay. Well, I don't see—I think the facts are pretty obvious, pretty simple in this case, rather. I don't see the panel going off on that tangent. If it appears that it is an implication at some point—they have also just heard the objection you just made regarding [that] they shouldn't be

assuming that your client abducted anybody. So, if it appears that it can be some inference I can take appropriate action at that time, but I don't see that as a possible risk to this document coming into evidence. I am going to let the government continue. [Government,] [i]f you can establish that the photograph on that is probative then I'll reconsider admitting the document.

Following further testimony by Mrs. AB, the military judge ultimately admitted the missing poster as a Prosecution Exhibit. Mrs. AB went on to testify about her son receiving two photographs from someone who had seen the missing poster on Facebook and believed they spotted KB on the morning of 21 April 2017. The government then offered the two digital images of KB. Trial defense counsel objected with the following colloquy:

> DC: Same basis as before, now, just add cumulative . . . at this point there is no relevance to those extra photos.
>
> MJ: Government, response?
>
> ATC2: Your Honor, she just testified that she received these in response to the missing person's poster. Somebody sent them, essentially, as 'spotted' photographs in response to the message; therefore, this is relevant to show what she looked like that day. . . .
>
> ATC2: Your Honor, I can go into more detail. It is highly relevant if the defense wants to say that this was consensual because she will later testify that it was hours after she was dropped off by the Lyft down in Wahiawa. Those were the clothes she was wearing, those black leggings. . . .
>
> ADC: Your Honor, if that is the case those photographs were taken close in time to the photograph[] that is already admitted into evidence. So, I don't understand how those photographs are related to the underlying offenses.
>
> MJ: Okay. I permitted the previous photos for the reasons I already stated. I am going to permit these photos based on the relevance of the clothing that [KB] was wearing, and because the photo was taken after the night in question.

The military judge did not allow the government to admit the two photographs through Mrs. AB out of concern for a lack of proper foundation. However, KB testified directly following her mother. Her description of events matched what was reflected in the two photos and the government again sought to admit them. At that time, the military judge admitted the photos. At a later point, the military judge also agreed that he would consider a limiting instruction to the panel members about the missing poster. However, the final instructions did not contain any specific reference to either the missing poster or the photographs of KB. Both sides indicated on the record that they had no objection to the final instructions. Appellant now argues that the military judge abused his discretion in admitting the missing poster and the three photographs. We disagree.

### A. *The Military Judge Did Not Err in Admitting the Missing Poster and Photographs*

In accordance with Military Rule of Evidence (Mil. R. Evid) 401, evidence is logically relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See also United States v. Colon-Angueria*, 16 M.J. 20, 26 (C.M.A. 1983) (materiality factors include "the importance of the issue for which the evidence was offered in relation to other issues in the case, the extent to which the issue is in dispute, and the nature of the other evidence in the case pertaining to the issue").

Even if a military judge finds that evidence is relevant under Mil. R. Evid. 401, the evidence may still be excluded under Mil. R. Evid. 403. That rule provides that the military judge may exclude logically relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Stephens*, 67 M.J. 233, 236 (C.A.A.F. 2009) ("The overriding concern of M.R.E. 403 is that the evidence will be used in a way that distorts rather than aids accurate fact finding.") (citation and internal quotation marks omitted). Unfair prejudice is that which "speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Collier*, 67 M.J. 347, 354 (C.A.A.F. 2009) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

There are three different standards under which we review a military judge's decision to admit evidence under Mil. R. Evid. 401 and 403. Where the military judge places his reasoning on the record, we review the military judge's decision to admit or exclude evidence for abuse of discretion. *United States v. McElhaney*, 54 M.J. 120, 129–30 (C.A.A.F. 2000). However, where the military judge fails to make an adequate record of his Mil. R. Evid. 403 analysis, we give less deference. *United*

*States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). Finally, where a military judge conducts no analysis, we give no deference to his ruling and must instead examine the evidence anew and conduct our own balancing under Mil. R. Evid. 403. *Id.*; *United States v. Butler*, ARMY 20180385, 2020 CCA LEXIS 188, *11 n.8 (Army Ct. Crim. App. 29 May 2020) (mem. op.).

First, as to the missing poster, the record demonstrates that the military judge and counsel were focused on Mil. R. Evid. 401 and 403. The record reflects that the parties and the military judge all evoked the correct terminology of relevance and prejudice in their exchanges. However, the military judge did not clarify what he ultimately determined to be the probative value of the missing poster, nor did he completely explain how he balanced that probative value against the dangers of unfair prejudice proffered by defense counsel. As such, out of an abundance of caution, we will give his decision to admit the missing poster less deference. *See Manns*, 54 M.J. at 166.

Under this standard, we still find that the military judge did not err in admitting the missing poster. The government argued that the missing poster was relevant because it contained a current photo of KB. Given that the trial took place nearly a year after the sexual assault, KB's appearance at the time of the offense was relevant. Although the record is not completely clear, the military judge appeared to agree with the government on this point. We find that KB's appearance around the time of the offense was relevant. Moreover, we find that the missing poster contained other relevant biographical data on KB, such as her height and date of birth.[4] Finally, it contained a description of the clothing KB was wearing during the incident and which was later tested for forensic evidence. Given that the standard for relevance is low, we find that the military judge correctly determined that the information on the missing poster was relevant.

We further find that the military judge did not err in applying the Mil. R. Evid. 403 balancing test. If there was any prejudice from the missing poster, its danger did not substantially outweigh the probative value of the evidence. Appellant argued at trial that the poster suggested appellant had kidnapped KB. On appeal, appellant argues that the missing poster introduced the emotionally charged dynamic of parents desperately looking for a missing teen. According to appellant, this was designed to inflame the panel members' passions against appellant. However, KB was in fact a missing runaway and her parents were in fact looking for her. While such evidence might have been better suited for sentencing, those facts were part of the *res gestae* of the offense and could be properly presented to the panel on the

---

[4] KB's age was an element of the charged offense of Rape of a Child, and the possible lesser-included offense of Sexual Assault of a Child. *See* UCMJ art. 120b.

merits, regardless of whether the facts came from KB's mother, from KB herself, or from the contents of an admitted exhibit.[5] Appellant has not demonstrated under all the facts of this case that admission of the missing poster presented a danger of unfair prejudice, confusion of the issues, misleading of the panel, or that they were unduly cumulative. Accordingly, we find that the military judge did not abuse his discretion by admitting the document even under a less deferential standard.

With regard to the two photographs taken the morning after the sexual assault, the military judge was more clear. In that case, the government offered the photos to verify the timeline of events and to show what KB was wearing shortly after the sexual assault. Defense counsel did not explain how the photos were prejudicial beyond indicating that they were cumulative with the missing poster. The military judge agreed that they were relevant to because of their link to the timeline and because they reflected what KB was wearing.

Likewise, we are not convinced that the probative value of the two photographs of KB sitting alone the day after the sexual assault was substantially outweighed by the danger of unfair prejudice or any other Mil. R. Evid. 403 grounds. Trial defense counsel did not identify any specific prejudice at the time the photos were admitted. Now on appeal, appellant asserts that the photographs had emotive appeal because they show KB sitting against a graffiti covered wall and looking wistfully towards the photographer. However, we find that whatever emotive appeal the photos had, it was not sufficient to substantially outweigh their probative value in confirming KB's version of events and demonstrating the condition of her clothing which contained appellant's DNA. While the probative value of the photographs was limited due to their cumulative nature, appellant has not demonstrated that the military judge erred in his application Mil. R. Evid. 403's balancing test.

*B. Even If the Military Judge Erred, Appellant Suffered No Prejudice*

Assuming arguendo the military judge erred in overruling appellant's objection and admitting the missing poster and the two photographs of KB, we conclude appellant suffered no prejudice. In accordance with *United States v. Solomon*, 72 M.J. 176, 182 (C.A.A.F. 2013), "[w]hen a military judge abuses his discretion in the M.R.E. 403 balancing analysis, the error is nonconstitutional," such that the government must demonstrate "that the error did not have a substantial influence on the findings." (citations and internal quotation marks omitted). To assess potential prejudice, this court weighs the strength of the prosecution's case, the strength of the defense case, the materiality of the evidence in question, and the quality of the evidence. *United States v. Barnett*, 63 M.J. 388, 397 (C.A.A.F. 2006).

---

[5] *See United States v. Thomas*, 11 M.J. 388, 392-93 (C.M.A. 1981) (the *res gestae* of an offense is so inherently relevant that it does need a separate limiting instruction).

Here we find the government's case was strong. KB's testimony was consistent with appellant's in all aspects except consent and whether there was anal penetration. On both of those points, KB's testimony was credible and consistent with the other evidence, to include her statements to the doctor conducting her forensic examination and the doctor's testimony regarding his findings. On the other hand, the defense case was weak. Appellant's testimony that a fifteen-year-old girl had simultaneous consensual intercourse with two adult males with whom she had just met at a McDonald's a few hours prior is not credible. Moreover, appellant claimed to have worn a condom, yet his semen was found on KB's clothing. Finally, there was character testimony that appellant was not truthful.

In the context of all of the evidence, the missing poster and digital photos of KB were not particularly material. KB and her mother both testified to much of the same evidence as revealed in the challenged exhibits. Finally, the quality of the evidence was not substantial. Neither were critical to proving any of the elements of the offense. That critical evidence came from KB's testimony, which was largely corroborated by appellant. Accordingly, we find that even if the military judge erred, there was no prejudice.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Chief Judge KRIMBILL and Judge WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10