*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Jamahl K. FLOWERS**
Master-at-Arms Third Class (E-4), U.S. Navy
*Appellant*

**No. 202100030**

_____

Decided: 1 July 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Kimberly J. Kelly (arraignment)
Lawrence C. Lee (motions and trial)

Sentence adjudged 16 October 2020 by a special court-martial convened at Naval Base Kitsap, Bremerton, Washington, consisting of officer and enlisted members. Sentence in the Entry of Judgment: a bad-conduct discharge.

For Appellant:
*William E. Cassara, Esq.*
*Lieutenant Commander Daniel O. Moore, JAGC, USN*

For Appellee:
*Lieutenant Megan E. Martino, JAGC, USN*
*Lieutenant John L. Flynn IV, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

A panel of officer and enlisted members convicted Appellant, contrary to his pleas, of three specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice [UCMJ],[1] for which they sentenced him to a bad-conduct discharge.

Appellant asserts three assignments of error, which we renumber as follows: (1) Appellant's company commander committed apparent unlawful command influence by stating, "there's a predator in our midst," in a meeting called specifically to address recent allegations of sexual assault, and the Government failed to prove beyond a reasonable doubt that the unlawful command influence did not place an intolerable strain upon the public's perception of the fairness of the military justice system; (2) the military judge abused his discretion in admitting evidence of the charged acts to prove Appellant's absence of mistake and intent to commit the charged acts under Military Rule of Evidence [Mil. R. Evid.] 404(b); and (3) the sentence of a bad-conduct discharge is inappropriately severe. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was convicted of touching the buttocks of three female subordinates without their consent for his sexual gratification, during times in which he had supervisory authority over them. In October 2017, while providing training to Master-at-Arms [MA3] Hotel[2] for her sentry qualification, Appellant began asking her which sexual positions she liked and then slapped and grabbed her buttocks several times, as she told him to stop and threatened to report him. In February 2019, while serving as static post supervisor of the controlled-access building where MA3 Madison was standing weekend duty, Appellant reached over and grabbed her buttocks without her consent, which

---

[1] 10 U.S.C. § 920.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

she awkwardly shrugged off, telling him they were both married. In November 2019, while conducting an inspection of MA3 Mike's watchtower around midnight, Appellant pushed his body against hers from behind, grabbed her hips and pushed her down on his lap, where she could feel his erect penis against her buttocks, and eventually grabbed her buttocks with both hands without her consent, as she repeatedly told him to leave.

Although Appellant apologized to MA3 Mike and told her to keep the incident a secret between them, she reported his behavior a few days later to the Naval Criminal Investigative Service [NCIS]. When interrogated, Appellant admitted he "overstepped his bounds" and grabbed her buttocks even after she told him she was uncomfortable, which he knew was wrong.[3] After learning about MA3 Mike's allegation, MA3 Madison and MA3 Hotel also made reports within weeks. During a subsequent NCIS interrogation, Appellant admitted he touched MA3 Madison and MA3 Hotel on the buttocks because he was attracted to them, describing MA3 Hotel's reaction as "shocked."[4]

In the wake of the sexual misconduct reports, Appellant's company commander, Major Bravo, called a meeting with all the females in the company to assess the command climate and make sure they felt safe where they worked. During the meeting, he discussed the "potential that there is a predator in our midst" and said, "if that's case, I want them out of the platoon, out of the company, away from you, so that way we can create a good work environment."[5] While he did not discuss the ongoing investigation or mention Appellant by name, many in the group were aware he was referring to Appellant, particularly when a friend of Appellant raised her hand after Major Bravo left the meeting and said, "I feel like nobody should have found out about this investigation other than Flowers, the investigators, and NCIS."[6]

---

[3] Pros. Ex. 7.

[4] Pros. Ex. 10.

[5] R. at 62.

[6] *Id*. at 75.

## II. DISCUSSION

### A. Apparent Unlawful Command Influence

We review claims of unlawful command influence de novo.[7] The prohibition against unlawful command influence derives from a statutory mandate:

> No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts.[8]

Our superior court has held that unlawful command influence can be actual or apparent.[9] Actual unlawful command influence occurs "when there is an improper manipulation of the criminal justice process which negatively affects the fair handling and/or disposition of a case."[10] Apparent unlawful command influence occurs when the influence of command, while not actually prejudicing an accused, nevertheless places an "intolerable strain on public perception of the military justice system."[11]

Appellant asserts that Major Bravo's comments during the company meeting constitute apparent unlawful command influence. To succeed in a claim of apparent unlawful command influence, an appellant bears the burden of presenting "some evidence"—beyond mere allegation or speculation—of unlawful command influence.[12] If the appellant meets this preliminary threshold, the burden shifts to the government to prove beyond a reasonable doubt that either the "predicate facts proffered by the appellant do not exist," or "the facts as

---

[7] *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018).

[8] UCMJ art. 37(a). As this Court noted in *United States v. Gattis*, 81 M.J. 748, 754 (N-M. Ct. Crim. App. 2021), Article 37 was amended in December 2019 to state, "No finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section unless the violation materially prejudices the substantial rights of the accused." However, because the comments at issue in this case were made prior to the amendment's effective date, we apply neither its new material prejudice requirement nor the *Gattis* holding regarding same.

[9] *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017).

[10] *Id.* (citations omitted).

[11] *Id.* (quoting *United States v. Wiesen*, 56 M.J. 172, 175 (C.A.A.F. 2001)).

[12] *United States v. Bergdahl*, 80 M.J. 230, 234 (C.A.A.F. 2020).

presented do not constitute unlawful command influence."[13] If the government does not meet this burden, it may then seek to prove beyond a reasonable doubt that the unlawful influence did not place an intolerable strain upon the public's perception of the military justice system and that "an objective, disinterested observer, fully informed of all the facts and circumstances, would [not] harbor a significant doubt about the fairness of the proceeding."[14]

Here, the military judge found that Major Bravo's comments during the company meeting did not place an intolerable strain on the public perception of the military justice system. We agree. While it is certainly a commander's prerogative to conduct climate checks and safety surveys in the wake of sexual misconduct allegations, particularly those occurring in the work environment, the use of pejorative terms like "predator" is both ill-advised and strongly discouraged, as it could be viewed as pre-judging an accused whom the law presumes to be innocent until proven guilty. Even where the subject of the allegations is not referred to by name, it is far too probable that the circulation of rumors will make the accused's name known for commanders to use language that might reasonably be perceived as publicly condemning an accused while he or she is pending investigation or trial for an alleged offense.

In this case, however, we find that an objective observer, fully informed of all the facts and circumstances, would not harbor significant doubt about the fairness of Appellant's court-martial. The meeting at which Major Bravo used the term "predator" took place six months before charges were preferred and 11 months before the trial. Major Bravo did not participate in the preferral or referral of charges. Nor is there any evidence that his comments influenced anyone with respect to their participation in the court-martial process or had a chilling effect on any potential witnesses. Under these circumstances, we find the Government has shown beyond a reasonable doubt that Major Bravo's comments during the meeting did not place an intolerable strain upon the public's perception of the military justice system.

**B. Admission of evidence under Mil. R. Evid. 404(b)**

Appellant asserts the military judge abused his discretion in instructing that the evidence for one charged offense could be considered for certain purposes under Mil. R. Evid. 404(b), which he argues allowed the evidence to be

---

[13] *Id.* (quoting *Boyce*, 76 M.J. at 249).

[14] *Boyce*, 76 M.J. at 249 (quoting *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013)).

improperly used as propensity evidence. We review a military judge's evidentiary rulings under Mil. R. Evid 404(b) for an abuse of discretion.[15] "To find an abuse of discretion requires more than a mere difference of opinion—the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[16]

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[17] Such evidence may, however, be admitted for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[18] While our superior court has held that evidence of charged offenses cannot be used as propensity evidence for other charged offenses, this rule does not apply to the non-propensity use of evidence of charged offenses to prove such things as intent or absence of mistake under Mil. R. Evid. 404(b).[19] Rather, Mil. R. Evid. 404(b) "is a rule of inclusion" that "permits admission of relevant evidence of other crimes or acts unless the evidence tends to prove *only* criminal disposition."[20]

Evidence offered under Mil. R. Evid. 404(b) must nevertheless satisfy the three-prong test announced in *United States v. Reynolds*: (1) the evidence must reasonably support a finding that the accused committed the other acts; (2) a fact of consequence—other than the accused's character or propensity for misconduct—must be made more or less probable by the evidence; and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.[21] When analyzing the last prong—legal relevance under Mil. R. Evid. 403—a military judge should consider the following non-exhaustive list of factors: (1) strength of the proof of the prior act, (2) probative weight of the evidence, (3) potential to present less prejudicial evidence, (4)

---

[15] *United States v. Harrow,* 65 M.J. 190, 199 (C.A.A.F. 2006).

[16] *United States v. Jasper*, 72 M.J. 276, 279-80 (C.A.A.F. 2013).

[17] Mil. R. Evid. 404(b)(1).

[18] Mil. R. Evid. 404(b)(2).

[19] *United States v. Hyppolite*, 70 M.J. 161, 164-65 (C.A.A.F. 2019); *United States v. Hills*, 75 M.J. 350, 357 n.4 (C.A.A.F. 2016).

[20] *United States v. Browning,* 54 M.J. 1, 6 (C.A.A.F. 2000) (citations omitted) (emphasis added).

[21] *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (citations omitted).

possible distraction of the fact finder, (5) time needed to prove the prior conduct, (6) temporal proximity of the prior event, (7) frequency of the acts, (8) presence of any intervening circumstances, and (9) relationship between the parties.[22] When the military judge conducts a proper balancing test under Mil. R. Evid. 403, the ruling will not be overturned unless there is a clear abuse of discretion.[23] We owe less deference to the military judge who fails to articulate his Mil. R. Evid. 403 balancing analysis on the record, and no deference where such analysis is altogether absent.[24]

In this case, the military judge initially granted a pretrial Defense motion to preclude use of the evidence under Mil. R. Evid. 404(b), finding that due to the lack of similarities and the lapse of time between the charged acts, the probative value of the evidence for Mil. R. Evid. 404(b) purposes was substantially outweighed by the danger of unfair prejudice. The Government moved for reconsideration of this ruling, arguing it should be able to use the evidence to show "a pattern, intent, and a lack of mistake on behalf of [Appellant]."[25] Subsequently, after the close of the evidence at trial, the Defense requested and was granted a mistake-of-fact-as-to-consent instruction for the nonconsensual touching of MA3 Mike alleged in Specification 1 of the Charge. In response, the Government requested an instruction allowing the evidence regarding MA3 Madison and MA3 Hotel (Specifications 2 and 3) to be used under Mil. R. Evid. 404(b) to prove Appellant's absence of mistake with respect to MA3 Mike (Specification 1). The Defense opposed under *Reynolds*' third prong,[26] arguing that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice that the evidence would be improperly used to prove Appellant's propensity to commit the charged act.

The military judge granted the Government request for a Mil. R. Evid. 404(b) instruction, which he found "narrowly tailored with absence of mistake

---

[22] *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citing *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000)). While the *Wright-Berry* factors were initially used to assess the legal relevance of propensity evidence offered under Mil. R. Evid. 413, our superior court has also used them to assess the legal relevance of other-acts evidence under Mil. R. Evid. 404(b). *See United States v. Barnett*, 63 M.J. 388, 396 (C.A.A.F. 2006).

[23] *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citation and internal quotation marks omitted).

[24] *Id.*

[25] Appellee's Mot. to Attach of 15 December 2021, App. A at 4.

[26] The Defense conceded the first two prongs of the *Reynolds* test were met.

of fact and intent," and concluded, without further elaboration, that "the probative value is not substantially outweighed by a danger of unfair prejudice."[27] He provided the Defense-requested, mistake-of-fact instruction for Specification 1 and the standard "spillover" instruction that the members must keep the evidence of each offense separate. He then instructed that, notwithstanding the spillover instruction, evidence that Appellant may have touched MA3 Madison and MA3 Hotel on the buttocks without their consent may be considered "to show absence of mistake of fact as to consent related to [MA3 Mike]" and "for the purpose of its tendency, if any, to show [Appellant's] intent, as it relate[d] to touching [MA3 Mike] with the intent to gratify his sexual desires."[28] He further instructed that the members "may not consider this evidence for any other purpose" and "may not conclude or infer from this evidence that the accused is a bad person or has criminal tendencies."[29]

While we give the military judge's ruling little deference because he did not articulate his reconsidered Mil. R. Evid. 403 balancing on the record, we find his conclusion under *Reynolds*' third prong reasonable. We find the evidence of Appellant's conduct toward MA3 Madison and MA3 Hotel probative regarding the issues of intent and lack of mistake with respect to his subsequent conduct toward MA3 Mike, particularly in light of the mistake-of-fact instruction pertaining to MA3 Mike that the military judge gave at Defense request. Although the incidents occurred eight months and two years prior, respectively, they involve similar one-on-one conduct by Appellant using his supervisory role to commit repeated, nonconsensual touching of a sexual nature upon isolated, female subordinates despite their protests. As this evidence was already before the members on the charged offenses, it required no additional time to prove at trial, presented no possible distraction to the factfinder, and was the least prejudicial evidence possible under the circumstances. The evidence is also strong, as it is corroborated by Appellant's admissions that he touched both MA3 Madison and MA3 Hotel on the buttocks because he was attracted to them, and that MA3 Hotel was shocked when he did so.

We further find the probative value of this evidence on the issues of intent and lack of mistake is not substantially outweighed by the danger of unfair prejudice that the evidence was impermissibly used as mere propensity evidence. In conjunction with his Mil. R. Evid. 404(b) instruction, the military

---

[27] R. at 685.

[28] *Id*. at 705.

[29] *Id*.

judge provided an appropriate limiting instruction that the evidence not be used to conclude or infer that the accused is a bad person or has criminal tendencies, and we find no evidence in the record to overcome the presumption that the members followed this instruction.[30]

Accordingly, we find no abuse of discretion by the military judge in allowing the evidence regarding Appellant's touching of MA3 Hotel and MA3 Madison to be considered for the limited purposes under Mil. R. Evid. 404(b) of proving Appellant's intent and lack of mistake with respect to the charged touching of MA3 Mike.

### C. Sentence Appropriateness

Appellant asserts that his sentence to a bad-conduct discharge is inappropriately severe. We review sentence appropriateness de novo.[31]

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[32] This requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[33] We have significant discretion in determining sentence appropriateness, but may not engage in acts of clemency.[34]

We find the sentence to a bad-conduct discharge appropriate in this case. Appellant was convicted of using his positional authority to sexually abuse three isolated subordinates under his supervision. While his service and character in other contexts may have been exemplary, his wrongful actions caused the three victims in this case to suffer not only fear and anxiety, but also a loss of faith in their fellow Sailors. Taking into account the evidence in extenuation and mitigation, as well as in aggravation, and giving individualized consideration to Appellant and the nature and seriousness of the offenses, we find that the sentence to a bad-conduct discharge serves the interests of justice and that Appellant received the punishment he deserves.

---

[30] *See United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018).

[31] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[32] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[33] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[34] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[35]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

KYLE D. MEEDER
Interim Clerk of Court

---

[35] Articles 59 & 66, UCMJ.